# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

ADRIAN LITTLE,                          :

      Petitioner,              :        Case No. 3:10cv00216

  vs.                                   :        District Judge Walter Herbert Rice
                                                 Magistrate Judge Sharon L. Ovington
WARDEN, Dayton Correctional             :
Institution,
                                        :
      Respondent.             :

                                        :

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.    Introduction

In December 2007, a state criminal indictment charged Petitioner Adrian Little with six drug-related crimes. Before his trial began he entered into a plea agreement with the prosecution. This was memorialized in April 2008 when he appeared with his attorney in the Greene County, Ohio Court of Common Pleas and pled guilty to two counts of conspiracy to traffic cocaine and two counts of conspiracy to traffic heroin. He is presently in state custody serving a total sentence of twelve years.[2]

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] When Petitioner filed this case he was incarcerated in the Dayton Correctional Institution. He is now incarcerated in the Southeastern Correctional Institution (SCI) in Lancaster, Ohio. The Warden of SCI, Sheri Duffey, is the proper Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). The case caption should remain the same to maintain docketing continuity.

Little brings the present case pro se seeking a writ of habeas corpus. He claims that two main constitutional flaws in the state proceedings: (1) he did not enter knowing and voluntary guilty pleas; and (2) his counsel provided constitutionally ineffective assistance. The case is before the Court upon Little's petition for writ of habeas corpus (Doc. #1), Respondent's answer/return of writ (Doc. #7), Little's traverse/reply (Doc. #16), and the record as a whole.

## II.    State Court Proceedings

### A.    Little's Sentence

During Little's change-of-plea hearing on April 2, 2008, the trial court informed him of the possible consequences that could result from his decision to plead guilty, including that the maximum sentence he might receive was thirty-two years. (Doc. #7, Exhibit 41 at PAGE ID#s 256-60). Little acknowledged that he understood this (Doc. #7, Exh. 41 at 256-57). The trial court also explained to Little (in part):

> Now, you are giving up certain constitutional guarantees that every person charged with a crime is entitled to exercise when they enter a plea of guilty. I am responsible to advise you of those rights, to make sure you understand those rights, and also to inform you that you are waiving those rights and be certain that's what you want to do.
>
> You are giving up the Constitutional right to a speedy and public trial to a jury or to the Court. You are giving up the right to confront witnesses called by the State to testify against you at trial by cross examining those witnesses. You're giving up the right of compulsory process to issue subpoenas to witnesses to come to trial to testify in your favor. You're giving up the right to require the State to prove your guilt at trial beyond a reasonable doubt as to each charge you're facing. That means that you don't have to prove you're not guilty, the State carries the

entire burden of proof.   And, finally, you give up the right not to be compelled to be a witness against yourself.  That means if you want to testify at trial you can; if you don't want to, no one can force you to testify or use your decision against you in any way.

Now, those are the Constitutional rights you give up when you enter a guilty plea.  Do you understand each of those Constitutional rights and what they mean and afford you?

(Doc. #7, Exh. 41 at 260-61).  Little answered "Yes."  *Id*. at 261.  The court then asked:

"And are you willing to waive them only for the purpose of entering a guilty plea in this case?"  *Id*.  Little again answered "Yes."  *Id*.  He then pled guilty to two counts of conspiracy to traffic cocaine and two counts of conspiracy to traffic heroin.  *Id*. at 261-63.

The court found that Little's plea was "voluntary, intelligent and knowingly made . . . ."

*Id*. at 261.

At a later hearing – held on May 9, 2008 – the trial court sentenced Little to a total of twelve years in prison.  (Doc. #7, Exhs. 10, 42).  This total prison sentence matched the total sentence the parties recommended in the plea agreement.   The sentence consisted of a six-year term of imprisonment on each of his four conspiracy convictions.  The court imposed the cocaine-related sentences concurrent to each other, effectively sentencing Little to a single six-year term of imprisonment on these convictions.  The court took the same approach with the two heroin-related sentences, effectively sentencing him to another six-year term of imprisonment on these convictions.  The court then ordered Little to serve these dual six-year sentences consecutively.  His sentence thus adds up to twelve years in prison.  (Doc. #7, Exhs. 10, 18, 42).

**B.      Appellate Proceedings**

Little did not file a timely direct appeal in the Ohio Court of Appeals, but he did file a notice of delayed appeal in September 2008.[3]  The Ohio Court of Appeals permitted his delayed-direct appeal to proceed.  Little asserted five assignments of error:

1.      Even an agreed upon sentence in accordance with R/C [Ohio Rev. Code] 2953.08(D) trial court erred and lack[ed] authority to sentence appellant on more than one count pursuant to Ohio Revised Code 2923.01 conspiracy A1F [sic[4]] under single indictment case.

2.      Trial court erred by informing appellant at change of plea hearing the maximum sentence would be 32 years opposed to 8 years creating U.S. and state constitution[al] violations, violating the Equal Protection Claus[e], wherefore making sentence null[  ] and void and at odd[s] with Criminal Rule 11(c)2 more less [sic] Involuntary Plea.

3.      Trial court erred by not properly taking into consideration R/C 2929.11 and 2929.12 before sentencing Appellant especially when it order[ed] a P.S.I. report but Appellant never was interviewed for P.S.I. report.

4.      Trial court erred by letting forfeiture take place when trial court didn't grant amendment until after Appellant['s] change of plea.

5.      Appella[te] counsel was ineffective violating Appellant['s] constitutional rights.

(Doc. #7, Exh. 13 at 92)(footnote added).

On August 21, 2009, the Ohio Court of Appeals issued its decision finding no

_____

[3]  In late September 2008, Little also returned to the trial court by filing a motion to withdraw his plea under Ohio R. Crim. P. 32.1 and a motion for relief from judgment.  (Doc. #7, Exhs. 27, 28). Respondent notes, "Apparently because his delayed appeal was then pending, the trial court did not rule upon his motion (it lacked jurisdiction)."  (Doc. #7 at 37).

[4]  Referring to Ohio Rev. Code §2923.01(A)(1)(f), *see* Doc. #7, Exh. 13 at 101.

4

merit in Little's second through fifth assignments of error. Yet the Ohio Court of Appeals sustained Little's first assignment of error and remanded his case to the trial court for "a hearing on the issue of whether any two or more of the conspiracy offenses to which Little has pled guilty must be merged. . . ." (Doc. #7, Exh. 18 at 151).

Little pursued a timely pro se appeal in the Ohio Supreme Court challenging the Court of Appeals' rejection of his second through fifth assignments of error. In a conclusory Entry, the Ohio Supreme Court dismissed Little's "appeal not involving any substantial constitutional question." (Doc. #7, Exh. 21). He then asked the Ohio Supreme Court to reconsider, but it declined to do so. *Id.*, Exhs. 22, 23.[5]

## C.     Little's Resentencing and Resulting Appeal

Meanwhile, Little found himself back in the trial court on April 2, 2010 for a sentencing hearing due to the Ohio Court of Appeals' remand Order. The trial court held a hearing, during which the investigating detective testified, to determine whether Little's convictions must be merged under Ohio Revised Code §2923.01(F).[6] After the hearing, the trial court again sentenced Little to prison for a total of twelve years. Its written decision explained that Little's involvement in the cocaine-related conspiracy was not

---

[5] Previously, Little had also filed two additional motions in Ohio Court of Appeals: a motion for execution and a motion for reconsideration. (Doc. #7, Exh. 24). The Ohio Court of Appeals overruled both motions. *Id.*, Exh. 25.

[6] Under §2923.01(F), "A person who conspires to commit more than one offense is guilty of only one conspiracy, when the offenses are the object of the same agreement or continuous conspiratorial relationship." *See generally State v. Childs*, 88 Ohio St.3d 558, 562 (2000) (discussing this statute and merger of conspiracy convictions for sentencing).

part of the same conspiratorial relationship as his involvement in the heroin-related

conspiracy. Given this, merger of the two conspiracies for sentencing was unwarranted

under Ohio Rev. Code §2923.01(F). (Doc. #7, Exh. 30).

On June 4, 2010, Little filed a notice of appeal and a motion for leave to file

delayed appeal. The Ohio Court of Appeals granted Little's motion and briefing ensued.

Little again attacked the maximum-sentence information he received during his original

plea hearing:

> "With stipulation of merging counts prior to merger hearing, trial court
> erred by informing appellant at change of plea hearing the maxium [sic]
> sentence would be 32 years creating U.S. and state constitution violations
> wherefore making sentence nullity & void & at odd with criminal Rule
> 11(c)(2) moreless involuntary plea via actual prejudice."

*State of Ohio v. Adrian Little*, 2011 WL 2584242 at *2, App. No. 2010–CA–38 (Ohio

App. 2 Dist., June 30, 2011) (capitalization removed; [sic] inserted by Ohio Court of

Appeals). The Ohio Court of Appeals found that res judicata barred this claim because

Little had raised it without success in his first delayed appeal. *Id.*

His remaining claim challenged the trial court's decision not to merge his

conspiracy convictions for sentencing:

> "Trial court erred by not merging conspiracy counts in single indictment
> pursuant to State v. Childs (200)[sic], 88 Ohio St.3d 528 & Ohio R.C.
> 2941.09 when the same object agreement was the forecast."

*Little*, 2011 WL 2584242 at *3 (capitalization removed; [sic] inserted by Ohio Court of

Appeals). The Ohio Court of Appeals found no merit in this claim, reasoning, "While

Defendant remained a drug dealer throughout the relevant time periods, and his purpose

6

was the same, to obtain large quantities of heroin and cocaine to sell, his conspiratorial

relationships changed during that time period." *Little*, 2011 WL 2584242 at * 3.  Given

this – and the presence of evidence in the record supporting this – the Ohio Court of

Appeals concluded:

> Because the conspiracy offenses in Counts III and V, on which
> sentences were imposed, are not the object or part of the same agreement or
> the same continuous conspiratorial relationship, they may be separately
> punished.  R.C. 2923.01(F) . . . .  The trial court did not err in imposing
> separate sentences on Counts III and V.

*Id.*[7]

Public records reveal that the Ohio Court of Appeals denied Little's motion for

reconsideration on September 30, 2011.  It appears that Little did not seek further review

in the Ohio Supreme Court.  *See* http://www.co.greene.oh (Clerk of Court; search

"CourtView" database).


## III.   Federal Habeas Petition

Little's habeas petition raises two grounds for relief.  He first attacks his guilty

plea:

> Ground one:  Guilty Plea Obtained Unlawfully & Not Made Voluntarily
> with the Understanding of the Nature of the Charges & Consequences of the
> Plea.

> Supporting facts:  Trial court erred by informing petitioner at change of plea

---

[7] Little also filed an "Amended Assignments of Error" contending that the trial court erred by
denying his motion for grand jury transcripts.  He does not raise this claim in the present case.
Regardless, the Ohio Court of Appeals found it barred by res judicata. *Little*, 2011 WL 2584242 at *4.

> hearing the maximum sentence would be 32 years opposed to 8 years creating U.S. & State Constitution violations. Since Petitioner only could have been convicted on only one count of conspiracy pertaining to one indictment.

(Doc. #1 at 4). His second ground for relief succinctly challenges the constitutionality of his trial counsel's representation:

> Ground two: Ineffective [assistance] of counsel.

> Supporting facts: Trial counsel performance was below standards at odds with Strickland v. Washington prongs.

## IV.    Discussion

### A.    Little's First Ground For Relief

#### 1.

Respondent contends that Little's challenge to his guilty plea is moot, in part, because he has already received the remedy he seeks – a remand for a new hearing. This contention lacks merit because Respondent misperceives the substance of the remand order and hearing. The Ohio Court of Appeals remanded Little's case for a hearing to determine whether Ohio Rev. Code §2923.01(F) required the trial court to merge the four conspiracy counts when determining Little's total sentence. *See* Doc. #7, Exh. 18 at 143-44, 151. Little, therefore, did not receive the remedy he sought on direct appeal – a remand for a new plea hearing; he instead received a remand for a new sentencing hearing. And the habeas relief Little seeks in the present case, if granted, would provide him with an opportunity to reconsider whether he wants to plead guilty or proceed to trial on the indicted charges. For these reasons, neither the Ohio Court of Appeals' decision

nor the hearing on remand moots his first ground for relief.  *Cf. Wedgewood Ltd.
Partnership I v. Township Of Liberty, Ohio*, 610 F.3d 340, 348 (6th Cir. 2010)("Simply
stated, a case is moot when the issues presented are no longer 'live' or the parties lack a
legally cognizable interest in the outcome.").

In addition, the Ohio Court of Appeals found no merit in Little's second
assignment of error, which is the same claim he raises as ground one in his present habeas
petition.  Having litigated and lost on this claim in the Ohio Court of Appeals, then having
timely presented it to the Ohio Supreme Court, Little has not only exhausted this ground
for relief, it is ripe, not moot, for review in the present case.

## 2.

Review begins with the standards set by the Antiterrorism and Death Penalty Act
(AEDPA).[8]  The AEDPA significantly constricts the reach of the writ of habeas corpus
"'with respect to claims adjudicated on the merits in state court.'"  *Coomer v. Yukins*, 533
F.3d 477, 484 (6th Cir. 2008) (quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct.
1495 (2000)).  A merit-based, state-court decision does not warrant habeas relief under
the AEDPA "unless the adjudication of the claim ... resulted in a decision that was
contrary to, or involved an unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States . . . ."  28 U.S.C. §2254(d)(1); *see
Washington v. Renico*, 455 F.3d 722, 728 (6th Cir. 2006).  "The [AEDPA's] 'contrary to'

---

[8]  The AEDPA is codified in part at 28 U.S.C. §2254.  *See* Pub.L. No. 104-132, 110 Stat. 1214.

clause is satisfied 'if the state court arrive[d] at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decide[d] a case differently than [the U.S. Supreme] Court has on a set of materially indistinguishable facts." *Villagarcia v. Warden*, 599 F.3d 529, 533 (6th Cir. 2010) (brackets added in *Villagarcia*) (quoting in part *Williams*, 529 U.S. at 413).

"Under [the AEDPA's] 'unreasonable application' clause..., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Villagarcia*, 599 F.3d at 533 (quoting *Williams*, 529 U.S. at 411); *see Lovell v. Duffey*, 629 F.3d 587, 594 (6th Cir. 2011). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *McKinney v. Ludwick* , 649 F.3d 484, 488 (6th Cir. 2011)(quoting in part *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)) (other citations omitted).

In the present case, as he did in the Ohio Court of Appeals, Little argues that his guilty plea was not knowing and voluntary because the trial court incorrectly informed him that the maximum sentence he faced was thirty-two years (eight years on each of the four counts of conspiracy). The Ohio Court of Appeals' decision on Little's delayed-direct appeal was the last reasoned decision by the Ohio courts finding no merit in this claim. Its decision, therefore, is the focal point of federal habeas review under the AEDPA. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see Pudelski v. Wilson*, 576

F.3d 595, 607 (6th Cir. 2009).

## 3.

The Ohio Court of Appeals quoted Little's claim as follows:

"TRIAL COURT ERRED BY INFORMING APPELLANT AT CHANGE OF PLEA HEARING [the hearing at which his pleas of guilty were tendered and accepted] THE MAXIMUM SENTENCE WOULD BE 32 YEARS OPPOSED TO 8 YEARS CREATING U.S. AND STATE CONSTITUTION VIOLATIONS, VIOLATING THE EQUAL PROTECTION CLAUS [sic], WHEREFORE MAKING SENTENCE NULLITY AND VOID AND AT ODD WITH CRIMINAL RULE 11(C) 2 MORE LESS [sic] INVOLUNTARY PLEA."

(Doc. #7, Exh. 18 at *8-*9; *Little*, 2009 WL 2602253 at * 5 (Ohio App. 2 Dist., Aug. 21, 2009) ([sics] and bracketed information inserted by Ohio Court of Appeals).

The Ohio Court of Appeals then discussed and rejected Little's claim as follows:

When Little tendered his pleas, the trial court engaged in a thorough plea colloquy, as required by 11(C)(2). During the course of that colloquy, the trial court informed Little that the maximum aggregate sentence that might result from his pleas would be 32 years, the maximum sentence on each of the four counts being eight years. This statement was entirely correct, based upon the information available to the court at that time.

A trial court may accept pleas to multiple counts, just as it may accept and file jury verdicts of guilty on multiple counts, but it may not enter convictions on multiple counts in situations covered by R.C. 2923.01(F). The trial court is required to hold a hearing to determine whether merger applies (in a case in which merger appears, from the nature of the indicted offenses, to be a possibility) before entering convictions on multiple counts.

"When a defendant enters a guilty plea to multiple offenses of similar import and the trial court accepts the plea, the trial court must conduct a hearing before entering a judgment of conviction and make a determination as to whether there were allied offenses of similar import

11

committed with a single animus; whether there were offenses committed separately or with a separate animus as to each offense. If the offenses are found to be allied offenses, a judgment of conviction may be entered for only one offense. If the offenses are found not to be allied offenses, a judgment of conviction may be entered for each offense." *State v. Stephens* (June 10, 1993), Cuyahoga App. Nos. 62554, 62555, 62556, quoted approvingly in *State v. Latson*, [133 Ohio App.3d 475, 481 (1999)], 728 N.E.2d 465.

Thus, when the trial court in the case before us advised Little of the possible consequences of his guilty pleas, and then accepted them, the trial court was not required to conduct, and had not conducted, a hearing on the merger issue. Consequently, when the trial court advised Little that a possible consequence of his guilty pleas to the four conspiracy offenses could be an aggregate sentence totaling 32 years, the trial court was entirely correct. At that time, the trial court was in no better position than Little to calculate the likelihood of merger of the conspiracy offenses, and arguably was in a worse position, since Little presumably had some knowledge of the facts underlying the offenses.

(Doc. #7, Exh. 18 at 151-52; *Little*, 2011 WL 2602253 at *5-6).

In the present case, Little argues that the maximum sentence he could have received was sixteen years because the trial court has twice declined to merge his concurrent eight-year, cocaine-related sentences with his concurrent eight-year, heroin-related sentences. Little maintains that if imposed consecutively, these dual eight-year sentences exposed him to a maximum sentence of sixteen years. In contrast, the trial court incorrectly, according to Little, informed him at his plea hearing that his maximum sentence was thirty-two years. He thus concludes that with this incorrect information in mind, his guilty pleas were not knowing and voluntary.

Under clearly established federal law, as determined by the Supreme Court:

A defendant who pleads guilty waives a number of federal

12

constitutional rights, including the right to a jury trial and the right to confront his accusers. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Because of the importance of these rights, reviewing courts must ensure that the defendant's waiver was knowing and voluntary. We therefore insist that the defendant appreciated the consequences of the waiver, did so without coercion, and understood the rights surrendered. *Brady v. United States*, 397 U.S. 742, 748-50, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Fautenberry v. Mitchell*, 515 F.3d 614, 636-37 (6th Cir.2008). Specifically, guilty pleas "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748, 90 S.Ct. 1463. The Supreme Court defines a voluntary plea as one "entered by one fully aware of the direct consequences." *Id*. at 755, 90 S.Ct. 1463.

*Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009). "While a defendant need not know all the possible consequences of his plea, like the loss of his right to vote or own a gun, or the effect on future sentence, he must be aware of the maximum sentence to which he is exposed." *Ruelas*, 580 F.3d at 408 (citing *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994); *Hart v. Marion Corr. Inst*., 927 F.2d 256, 259 (6th Cir. 1991)).[9]

Assuming in Little's favor, and consistent with *Ruelas*, 580 F.3d at 408, that the Constitution required the trial court to inform him at his plea hearing of the maximum sentence he faced, he has not shown that the Ohio Court of Appeals' decision was contrary to this rule or involved an unreasonable application of it. The record of Little's plea hearing establishes that the trial court fully informed him of the maximum sentence

---

[9] By citing to *King* and *Hart*, rather than a Supreme Court case, *Rueklas* reveals a potential issue over whether it is clearly established under the Sixth Amendment that a criminal defendant must be fully informed of the maximum sentence he might receive upon pleading guilty. *See, e.g., Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008)(and cases cited therein).

he faced, explaining, "Now, I want to advise you that by entering a plea to these offenses that the maximum sentence that the law would provide for is a sentence of 32 years of imprisonment . . . ." (Doc. #7, Exh. 41 at 256). The Ohio Court of Appeals found this to be a correct calculation at the time of the plea hearing because the trial court did not merge any of the conspiracy counts until later – at the May 2008 sentencing proceeding. Because none of the conspiracy counts were merged at his April 2008 plea hearing, Little faced a possible maximum sentence of thirty-two years in prison (a maximum eight-year term on each of four counts; imposing them consecutively would raise his maximum sentence to thirty-two years). This thirty-two-year maximum sentence was correct even though Ohio Rev. Code §2923.01(F) created a possibility that some of the four conspiracy counts might be merged later. *See Brady*, 397 U.S. at 749-50. Because Little was fully informed of the correct maximum sentence he faced when he decided to plead guilty, the Ohio Court of Appeals' decision was neither contrary to nor involved an unreasonable application of Supreme Court case law.

Little mistakenly believes that the later decisions by the trial court to partially merge his conspiracy convictions expose an error in the trial court's original conclusion – at the plea hearing – that the maximum sentence he faced was thirty-two years. Again, however, at the time of his plea hearing, he faced a maximum sentence of thirty-two years. Having been fully and correctly informed of the direct consequences of his plea at his plea hearing, his challenge to his plea as unknowing and involuntary lacks merit.

Accordingly, Little's first ground for relief lacks merit.

14

**B.    Little's Second Ground for Relief**

Little contends that his trial counsel provided constitutionally ineffective assistance.  He does not elaborate on this in his habeas petition, but in his Reply he asserts that his first ground for relief "pours into . . . ground two for ineffective assistance of counsel; where again at the merger hearing the trial court vacated already two convictions this proves petitioner me[e]ts the *Strickland v. Washington* prong.  With the fact that two of petitioner's conspiracy [convictions] ha[ve] merged & been vacated a writ should be granted."  (Doc. #16 at 305-06).  In the Ohio Court of Appeals on his original direct appeal, Little contended that his counsel provided ineffective assistance in light of the errors set forth in all his assignments of error.

To establish constitutionally ineffective assistance of counsel (IAC), a convicted defendant must show that his trial counsel's acts, errors, or omissions fell below an objective standard of reasonableness.  *Strickland,* 466 U.S. at 687-88.  This demanding standard requires the convicted defendant to establish that (1) defense counsel provided deficient performance and (2) the deficient performance prejudiced the defense so as to render his trial fundamentally unfair and the result unreliable.  *Id*.  "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  A defendant who pled guilty "shows prejudice by demonstrating 'a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to

15

trial.'" *Lyons v. Jackson*, 299 F.3d 588, 596 (6th Cir. 2002) (quoting in part *Hill*, 474

U.S. at 59) (brackets in *Lyons*).

Because the AEDPA precludes a *de novo* review of constitutional claims, *see Price*

*v. Vincent*, 538 U.S. 634, 639 (2003), a federal habeas petitioner carries a heavy burden

when attempting to establish an IAC claim. "The Supreme Court has made clear that

post-AEDPA claims of ineffective assistance of counsel brought by habeas petitioners

will succeed only in very limited circumstances.... For [the petitioner] to succeed..., he

must do more than show that he would have satisfied *Strickland*'s test if his claim were

being analyzed in the first instance, because under §2254(d)(1), it is not enough to

convince a federal habeas court that, in its independent judgment, the state-court decision

applied *Strickland* incorrectly. Rather, he must show that the ... [state] Court of Appeals

applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Payne*

*v. Bell*, 418 F.3d 644, 665 (6th Cir. 2005).

Little's main IAC concerns seem to be that his trial counsel failed to inform him

that the maximum sentence he faced was sixteen years (not thirty-two years) and did not

object during the change-of-plea hearing to the trial court's statement that his maximum

sentence was thirty-two years. Little's assertion that the maximum sentence he faced at

the plea hearing was sixteen years is incorrect, as discussed above, *supra*, §IV(A)(3).

Consequently, if defense counsel had informed Little at the plea hearing that he faced a

maximum sentence of sixteen years in prison, this would have been incorrect. But,

defense counsel correctly informed Little about the thirty-two-year maximum sentence he

faced. Because defense counsel and the trial court correctly informed Little at the time of the plea hearing that the maximum sentence he faced was thirty-two years, defense counsel provided correct legal advice to Little, committed no error by allowing the trial court to inform Little about the maximum sentence, and did not deficiently represent Little in connection with his plea hearing or sentence. As a result, Little's IAC claim lacks merit, and the Ohio Court of Appeals' reasonably rejected this claim.

Additionally, the Ohio Court of Appeals found no merit in Little's assignments of error with the exception of the trial court's failure to conduct a hearing concerning whether any of the conspiracy counts should be merged for sentencing under Ohio Rev. Code §2923.01(F). Without these underlying errors, Little has not shown that, under the circumstances, his counsel's performance fell outside the "wide range of reasonable professional assistance" due under *Strickland*, 466 U.S. at 689 and *Hill*, 474 U.S. at 58-59. The only possible error counsel might have committed relates to the Ohio Court of Appeals' decision to remand for a sentencing hearing. Assuming defense counsel erred by not asking the trial court to hold a hearing concerning the possible merger of the conspiracy convictions under §29230.1(F), this caused no prejudice to Little. He received the same merger and same resulting sentence – twelve years in prison – at both his original sentencing and re-sentencing on remand. Indeed, neither Little nor the record establish that defense counsel committed one or more errors. And, without an error by defense counsel, Little lacks a basis to build prejudice. He has not shown the existence of a reasonable probability that, without defense counsel's errors, he would not have pled

guilty.  *See Hill*, 474 U.S. at 58-59.

Accordingly, Little's second ground for relief provides no basis for habeas relief.

## V.      Certificate of Appealability

Before a petitioner may appeal a denial of his habeas petition, he must first obtain

a certificate of appealability.  28 U.S.C. §2253(c)(1)(A).  To obtain a certificate of

appealability when a habeas petition is denied on the merits, the petitioner must make a

substantial showing of the denial of a constitutional right.  *Slack v. McDaniel*, 529 U.S.

473, 484 (2000).  This is accomplished by showing that reasonable jurists could debate

whether the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further.  *Slack*, 529 U.S. at

484.  If the District Court dismisses the petition on procedural grounds without reaching

the merits of the constitutional claims, the petitioner must show that jurists of reason

would find it debatable whether the District Court is correct in its procedural ruling.

*Slack*, 529 U.S. at 484.

The conclusions reached in the instant Report are not debatable by jurists of reason

and the case does not otherwise present issues sufficient to encourage Little to proceed

further.  Consequently, a certificate of appealability should not issue in this case.

## IT IS THEREFORE RECOMMENDED THAT:

1.      Adrian Little's Petition for Writ of Habeas Corpus (Doc. # 1) be DENIED
        and DISMISSED;

2.      Petitioner be denied leave to appeal *in forma pauperis* and any requested certificate of appealability; and,

3.      This case be terminated on the docket of this Court.


December 6, 2011

      s/Sharon L. Ovington   
Sharon L. Ovington
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).